**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PATRICIA ANN HILL,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **NO.   22-cv-145** |
| | : | |
| **KILOLO KIJAKAZI,** | : | |
| **Acting Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

### <u>MEMORANDUM OPINION</u>

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                              **October 11, 2023**

Plaintiff Patricia Ann Hill brought this action seeking review of the Acting Commissioner of Social Security Administration's decision denying her claims for Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1131-11383f.  This matter is before me for disposition upon consent of the parties.  For the reasons set forth below, Plaintiff's Request for Review (ECF No. 8) is **GRANTED**, and the matter is remanded for further proceedings consistent with this memorandum.

### I.      PROCEDURAL HISTORY

Plaintiff protectively filed for SSDI and SSI, alleging disability since January 1, 2018, due to major depressive disorder, borderline personality disorder, psychosocial personal issues, bone spurs, mental health issues, acid reflux, and insomnia.  (R. 258).  The application was denied at the initial level and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 150-58, 167-76).  Plaintiff, represented by counsel, her husband, and a vocational expert (VE) testified at the November 10, 2020 administrative hearing.

(R. 50-86).  On February 10, 2021, the ALJ issued a decision unfavorable to Plaintiff.  (R. 24-49).  The Appeals Council denied Plaintiff's request for review on August 17, 2021, thus making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  (R. 12-18).

On January 2, 2022, Plaintiff filed a complaint in the United States District Court for the Eastern District of Pennsylvania.  (Compl., ECF No. 1).  Plaintiff consented to the jurisdiction of the Honorable David R. Strawbridge on January 14, 2022 pursuant to 28 U.S.C. § 636(c). (Consent, ECF No. 6).  She filed her Brief and Statement of Issues in Support of Request for Judicial Review on April 18, 2022.  (Pl.'s Br., ECF No. 8).  On May 17, 2022, the Acting Commissioner filed a response, and Plaintiff filed a reply brief on May 31, 2022.  (Def.'s Br., ECF No. 9; Pl.'s Reply Br., ECF No. 10).  On July 28, 2023, this matter was reassigned to me, and, on August 2, 2023, Plaintiff consented to my jurisdiction under § 636(c).  (Order, ECF No. 11; Consent, ECF No. 13).

## II.     FACTUAL BACKGROUND[1]

The Court has considered the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review.

Plaintiff was born on March 21, 1990, making her twenty-seven years old on the alleged disability onset date.  (R. 243).  She had at least a high school education and previously worked as an industrial cleaner, a fast food cook, a worker at a grocery store, a helper, and a stocking

---

[1]  The Plaintiff's request for review focuses on her mental impairments and specifically the ALJ's rejection of the opinion proffered by her therapist concerning the limitations arising out of her mental impairments.  (Pl.'s Br., ECF No. 8, 6-22).  Accordingly, the Court does not recite the evidence regarding her physical conditions, except where otherwise relevant to her challenge to the ALJ's decision.

clerk at a book warehouse.  (R. 259).

A. **Medical Evidence**

Between 2014 and November 2020, Plaintiff received outpatient psychiatric treatment and psychotherapy from Central Behavioral Health (Central).  (R. 309-378, 432-99, 55-810, 880-906).

At her psychiatric medication management appointments, Plaintiff was usually seen by psychiatrist Alexandre Geronian, M.D.  (R. 585-810, 880-906).  He diagnosed major depressive disorder with melancholic features, borderline personality disorder, and bipolar disorder.  (R. 341, 905).  Plaintiff's mental status findings were mostly unremarkable.  (R. 341, 345, 897-99, 904-05).  However, there were some findings of disheveled appearance, depressed/anxious mood, expansive/constricted/worried affect, increased psychomotor activity, loud speech, and persecutory thought content.  (R. 359, 498, 804-05, 892-93, 904-05).  Over the course of her psychiatric treatment, Plaintiff reported fluctuating levels of depression, mild paranoia, crying spells, mood swings, periods of insomnia and nightmares disturbing her sleep, anxiety, angry outbursts, and fear of leaving the house.  (R. 341, 490, 492, 884, 897. 904).  On September 23, 2020, she told the psychiatrist that she "hears 'noise,'" although she denied any auditory hallucinations.  (R. 884).  Plaintiff repeatedly denied that she had any suicidal or homicidal ideation at her medication management sessions.  (R. 345, 904).  On March 11, 2020, Plaintiff, although denying any suicidal or homicidal ideation, did report to the psychiatrist that she "gets urges to cut."  (R. 571).  At her next appointment on March 25, 2020, she said that she had "less urges to cut" and continued to deny homicidal or suicidal ideation.  (R. 573).

At her Central therapy sessions, Plaintiff reported varying degrees of depression, difficulty sleeping or sleeping too much, irritability, anhedonia, fatigue, lack of motivation, apathy, guilt, fear, and discomfort with being alone while at the same time trying to isolate

3

herself from others.  (*See, e.g.,* R. 723, 750, 760, 782, 788, 903).  She said "I'm not leaving the house, not getting out of bed." (R. 799).  At her February 19, 2018 session, Plaintiff admitted to passive suicidal ideation without plan or intent. (R. 329).  She said that she did not get along with her husband and "connected this to sometimes feeling that 'people would be better off if I wasn't here.'"  (*Id.*).  Plaintiff added that she would never harm herself because her son and nephew needed her, and a crisis plan was created.  (*Id.*).  On September 3, 2019, she told her therapist that she had suicidal thoughts almost every other day, saying things like "[y]ou would be better off without me." (R. 723).  Plaintiff claimed that she never had developed a plan to kill herself and that she would never act on her thoughts because of her son.  (*Id.*).

In March 2020, Plaintiff began weekly individual therapy sessions with Andrea H. Harner, M.S.S., a Central clinician intern. (R. 524-25).  At thirteen out of the twenty-three therapy sessions conducted by Ms. Harner between March and November 2020, Plaintiff responded with positive answers on the Columbia-Suicide Severity Rating Scale. (R. 524, 530, 533, 538, 541, 563, 798, 802, 807, 809, 887, 895, 902).

At her initial March 25, 2020 appointment with Ms. Harner, Plaintiff reported that she had been experiencing suicidal thoughts since the third grade. (R. 525).  She said that her suicidal thoughts had increased before the COVID pandemic and then worsened because of the stress caused by the crisis. (R. 525).  Her suicidal ideation was rated at a 5 out of 10, and "she identified thinking about cutting her wrist." (*Id.*).  She also listed motivating factors such as relatives like her son as motivating factors to stop her from acting on her thoughts.  (*Id.*).  Plaintiff subsequently reported some reduction in her suicidal ideation level and claimed that she was only experiencing suicidal ideation when "triggered," which occurred three to six times a week. (R. 528, 531).  She was able to identify "the current life stressors" triggering her ideation. (R. 534).  On April 30, 2020, she answered affirmatively to the questions of whether she had

4

been thinking about how she would kill herself and whether she had some intent on acting on her thoughts.  (R. 538).  Specifically, "[Plaintiff] reports she's had 3 suicidal thoughts over the week while she was sleeping."  (R. 539).  "[O]ne was me jumping off a bridge, one was cutting myself," and  "later in the session she reported having thoughts of 'taking something [medication] to get where I wanna go.'"  (*Id.*).  On May 12, 2020, Plaintiff reported an increase in passive ideation following her grandmother's death over the weekend.  (R. 542).  From the middle of May 2020 until the middle of July of 2020, she denied any suicidal ideation or indicated that she had only experienced passing suicidal ideation.  (R. 544-45, 547-48, 552-53, 555-56, 557-58, 560-61).  Plaintiff reported that she did not know the reason for the reduction in her suicidal ideation.  (R. 561).

At her July 14, 2020 therapy session with Ms. Harner, Plaintiff reported passing suicidal ideation earlier in the week, adding that she did know "when it happened" and that it was related to "my depression, me just worrying around."  (R. 564).  At her next session on August 11, 2020, Plaintiff "reports 'If I wake up, I hope I don't wake up, everyone would be better off without me. [Her son] can find somebody better off without me as his mom.'"  (R. 799).  Denying any intent or plan, she claimed she had suicidal ideation "twice a week."  (*Id.*).  Plaintiff indicated she was unable to reach out for support because she was isolating herself, and she said she did not use supportive services unless she had a major episode.  (*Id.*).  In the treatment note for the August 25, 2020 session, Ms. Harner observed that "Plaintiff reports the passive SI 'are always there. It's like normal because they've been there so long.'"  (R. 803).  On September 9, 2020, Plaintiff reported an increase in passive suicidal ideation, including "not wanting to be here" and "wanting to sleep forever."  (R. 807-08).  The coping skills she was given did not reduce her symptoms.  (*Id.*).  Plaintiff reported passive suicidal ideation at her two subsequent therapy sessions in September 2020, and she indicated that the suicidal thoughts occurred two to three

5

times a week.  (R. 809-10, 887-88).

In her October 6, 2020 treatment note, Ms. Harner stated that the "therapy session focused on completing the Social Security Disability Income questionnaire and discussing how [Plaintiff's] depressive symptoms influence her work ability."  (R. 890).  Ms. Harner used open-ended questions to facilitate a discussion "on the symptoms of depression [Plaintiff] is experiencing, how it will impact her ability to work and complete the questionnaire to the best of her ability."  (*Id.*).  She explained to Plaintiff why the therapist "identified" the responses based on her own observations during their sessions.  (*Id.*).  It was also noted that Plaintiff "completed" the questionnaire and "identified [as] moderate [and] markedly" limited on most questions.  (*Id.*).  Plaintiff further reported that she continued to isolate and limit regular interaction with others and that she cannot manage her own money.  (*Id.*).

On October 15, 2020, Plaintiff told Ms. Harner that "I've had them [suicidal thoughts] before I started coming to [C]entral, they started in high school, but I didn't tell mom.  I don't act on them though."  (R. 896).  She reported experiencing suicidal ideation two times a week and explained that her son's emotional outbursts were the trigger.  (*Id.*).  On November 5, 2020, Plaintiff acknowledged passive suicidal ideation. (R. 900-03).  She denied active suicidal ideation and was unable to identify a trigger for "this change stating 'It comes & it goes.'"  (R. 903).

Ms. Harner signed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) (MSS) on November 15, 2020.  (R. 910).  The therapist opined that Plaintiff had marked limitations in understanding and remembering instructions/information, making judgments on simple work-related decisions, and interacting appropriately with the public, supervisors, and coworkers.  (R. 908-09).  In addition, Ms. Harner found that Plaintiff had an extremely limited ability to carry out and apply instructions/information, to respond

6

appropriately to usual work situations and changes in a routine work setting, and to maintain concentration, persistence and/or pace in a work setting. (*Id.*). She stated that her findings were supported by clinical notes and symptoms reported by Plaintiff and her own observations. (*Id.*). Ms. Harner also stated that Plaintiff would likely be "off task" 25% or more of the time. (R. 909). She opined that Plaintiff's daily fatigue, apathy, and suicidal ideations would negatively impact work attendance and performance. (*Id.*). For support, she cited the reported symptoms reported and her observations. (*Id.*). Ms. Harner anticipated that Plaintiff would be absent from work one day or more per week and would not be compliant with her treatment. (R. 910). Plaintiff could not manage benefits in her own best interest. (*Id.*). As to the onset date, it was noted that Plaintiff reported July 2, 2014 while the therapist started working with her on March 26, 2026. (*Id.*). Under the category of "medical or clinical findings that support" her assessment, the therapist stated that Plaintiff had "daily suicidal ideations based on [the] Columbia – Suicide – Severity – Scale." (*Id.*).

## B.    Non-Medical Evidence

The record also contains non-medical evidence. At the November 10, 2020 administrative hearing, Plaintiff testified that she stopped working part time in 2018 when her depression and anxiety had started to worsen following the deaths of her grandmother and uncle. (R. 60, 62, 67). She stated that, ten to fifteen days every month, she has episodes where she stays in bed all day, cries, has suicidal thoughts and dreams, and tells her husband "I just want to die" and that "I think he would be better off without me, him and my son would be better off without me." (R. 62, 64). Plaintiff explained that she has received mental health treatment since she was fourteen years old and that she was enrolled in self-contained special education classes. (R. 59, 66). Plaintiff has participated in weekly therapy sessions, and she has also been prescribed Venlafaxine, Clonidine, Omeprazole, Trazadone, Lexapro, Ritalin, Celexa, Lamictal,

and Seroquel.  (R. 62-63, 66-67).  According to Plaintiff, the medications and therapy are sometimes helpful.  (R. 63).

Plaintiff testified that she lives in an apartment with her husband and seven-year old son. (R. 58).  Her ability to read and write is horrible, she has difficulties with basic math, and she is not able to read the instructions on the back of a package to prepare a meal.  (R. 59-60).  She has difficulties taking care of her child whenever she has an episode, and her husband then has to get him ready for and take him to school.  (R. 58-59).  Her sister-in-law also helps them. (R. 67). Plaintiff asserted that she has memory problems, including being unable to remember most of her childhood, is horrible at paying attention or concentrating, can perform a task for no more than fifteen to twenty minutes, and needs to have information repeated back to her four or five times to understand it.  (R. 64).  She could occasionally go to the store and knows what is needed to pay for a few items.  (R. 60).  Plaintiff does not have a driver's license, and her husband or mother drives her.  (R. 59).  On days without an episode, she tries to help her husband clean the house and do the laundry.  (R. 64-65).  She also attempts to help with food shopping and goes to medical appointments, but she does not go anywhere else because she gets nervous outside.  (R. 65).

Plaintiff's husband also testified at the hearing.  He stated that his wife can do things ten to fifteen days out of the month, but that, on other days, she does not get out of bed, isolates herself, becomes very emotional and cries, has nightmares, and either sleeps too much or does not sleep at all.  (R. 69, 71).  She has suicidal thoughts, "always talk[ing] about [how] she might hurt herself, cut herself, crying . . . out of the blue," and "she kind of just [doesn't] want to . . . wake up."  (R. 71).  The husband indicated that the deaths of Plaintiff's grandmother and uncle contributed to her depression.  (R. 69).  He has to leave work to take care of their son, and his sister and a case worker also provide assistance.  (R. 68-73)  The husband takes care of the

laundry and about 90% of the cleaning.  (R. 72).  Plaintiff is able to go for a walk at the mall

with her husband or case worker a couple of days a week.  (R. 72-73).  Plaintiff's husband

further testified that she loses interest in activities like watching a movie in only fifteen or twenty

minutes and that she is "always beating herself up" about her poor math and reading skills.  (R.

74).  The husband stated that her medications are not very effective.  (R. 75).


III.    ALJ'S DECISION

Following the administrative hearing, the ALJ issued a decision in which she made the

following findings:

1.    The claimant meets the insured status requirements of the Social Security Act

through December 31, 2020.

2.    The claimant has not engaged in substantial gainful activity since January 1, 2018,

the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: plantar fasciitis, calcaneal

spurring, gastroesophageal reflux disease ("GERD"), left wrist carpal tunnel

syndrome, obesity, major depressive disorder, and borderline personality disorder

(20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant did not have an impairment or combination of impairments that

meets or medically equaled the severity of one of the listed impairments in 20

CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526,

416.920(d), 416.925 and 406.926).

5.    After careful consideration of the entire record, the undersigned finds that the

claimant has the residual functional capacity to perform light work as defined in

20 CFR 404.1567(b) and 416.967(b) except frequently operate foot controls;

never climb ladders, ropes, or scaffolds; occasionally climb stairs and ramps, balance, kneel, crouch, and crawl; frequently stoop; and no exposure to dangerous machinery with moving mechanical parts and unprotected heights.  The claimant can perform simple, routine, repetitive tasks, work with only occasional decision making required, only occasional routine changes in the work environment, and only occasional contact with the public, coworkers, and supervisors.

6.  The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on March 21, 1990 and was 27 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a, 416.969, 416.969(a)).

11.  The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2018, the alleged onset date, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 29-68).  Accordingly, the ALJ found Plaintiff was not disabled.  (R. 45).

IV.    **LEGAL STANDARD**

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to the Commissioner that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months.  42 U.S.C. § 1382c(a)(3)(A).  A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If [she] is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits [her] physical or mental ability to perform basic work activities.  If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work.  If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform [her] past work.  If the claimant cannot perform [her] past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The disability claimant bears the burden of establishing steps one through four. If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, she is able to perform substantial gainful activities in jobs existing in the national economy.  *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited.  A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence

and decided according to correct legal standards.  *See, e.g.*, *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a reasonable mind might accept as adequate."  *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted).  Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *See, e.g.*, *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).  The Court exercises plenary review over legal issues.  *See, e.g.*, *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).  Furthermore, the Commissioner may not offer "a post-hoc rationalization" or justification because "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision."  *Schuster v. Astrue*, 879 F. Supp. 2d 461, 466 (E.D. Pa. 2012) (quoting *Keiderling v. Astrue*, No. 07-2237, 2008 WL 2120154, at *3 (E.D. Pa. May 20, 2008)).

## V.   DISCUSSION

In her request for review, Plaintiff raises two claims: (1) the ALJ rejected the opinion of her treating therapist for erroneous reasons in violation of the applicable regulations and laws of this Circuit; and (2) the ALJ failed to include all of Plaintiff's credibly established limitations in her RFC and the hypothetical question posed to the VE.[2]  (Pl.'s Br., 6-22).

### A.   Ms. Harner's Opinion

The Commissioner modified the Social Security regulations in 2017, changing the way ALJs evaluate medical evidence.  The prior regulations, which govern claims filed before March 27, 2017, divided medical sources into three categories: treating, examining, and non-examining. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  ALJs were to weigh each medical opinion and could

---

[2]  In her reply brief, Plaintiff withdrew her separation of powers claim.  (Pl.'s Reply Br., ECF No. 10, at 1).

sometimes afford controlling weight to opinions from treating sources. *See id.*

Under the new regulations, ALJs do not place medical sources into these categories and can no longer afford controlling weight to any opinion. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, ALJs now evaluate the persuasiveness of each medical opinion and each prior administrative medical finding. *See id.* Five factors determine persuasiveness: (1) supportability; (2) consistency; (3) relationship with the claimant, including length, purpose, and extent of the treatment relationship, as well as frequency of examinations and whether the medical source examined the claimant firsthand; (4) specialization; and (5) other factors, like "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ must "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [her] determination or decision." *Id.* The ALJ need not explain her determinations regarding the other factors, but she must discuss supportability and consistency. *Id.*

Regarding supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Regarding consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

13

The ALJ summarized and evaluated Ms. Harner's opinion as follows:

> In November 2020, the claimant's therapist since March 2020 indicated that the claimant had extreme limitation in her ability to carry out and apply instruction/information, respond appropriately to usual work situations and changes in a routine work setting, and maintain concentration, persistence, and/or pace in a work setting; and marked limitations in her ability to understand and remember instructions/information, make judgment on simple work-related decisions, and interact appropriately with the public, supervisors, and coworkers ([R. 907-11]).  The therapist noted that the claimant would likely be absent from work one day per week, that she would be off task 25% or more of the workday and that this assessment was based on clinical notes, subjective symptom complaints, and symptoms observed by the therapist ([*id.*]).

> This assessment is not persuasive because this therapist has only treated the claimant for a fraction of the relevant period and because treatment notes from the therapist and psychiatrist do not support such extreme limitations with generally normal mental status exams from her psychiatrist, including consistent findings of logical thought processes, intact memory and concentration, and denial of suicidal ideation ([R. 522-84, 585-810, 880-906]), as discussed above.  Furthermore, the claimant's therapist actually asked the claimant about her thoughts regarding her abilities and the questions on the assessment instead of basing her assessment on her own objective findings or the objective findings of the psychiatrist ([R. 890]).

(R. 42).

Plaintiff argues that the ALJ erred by placing too much weight on the psychiatrist's generally normal mental status findings.  (Pl.'s Br., ECF No. 8, at 9-14).  She also argues that, even if the ALJ properly considered the mental status findings, the ALJ erroneously discounted the opinion due to the psychiatrist's consistent findings of "denial of suicidal ideation" because the therapist's own treatment notes and Plaintiff's testimony showed that she continually struggled with suicidal ideation.  (*Id.*).  Plaintiff contends that the ALJ's inference that Ms. Harner did not treat Plaintiff for an adequate length of time was ill-founded because she had more than enough time to develop a well-informed opinion about Plaintiff's mental state and

abilities.  (*Id.* at 12).  She challenges the ALJ's finding that the therapist's assessment was based on Plaintiff's self-reporting as inconsistent with the nature of mental health treatment and the record, which showed that the opinion was not merely a recitation of Plaintiff's subjective statements.  (*Id.* at 14-15).  Plaintiff asserts that Ms. Harner's treatment records "support" her opinion and that the ALJ failed to address the "consistency" factor.  (*Id.* at 15-17).  The Acting Commissioner responds by arguing that the ALJ adequately explained that she found that the opinion was not supported by Ms. Harner's own therapy notes and was inconsistent with the mental status examinations of the treating psychiatrist.  (Def.'s Br., ECF No. 9, at 15).  According to the Acting Commissioner, Plaintiff, although reporting suicidal ideation, also acknowledged that these feelings were longstanding and that she never had a plan or intent to follow through on them.  (*Id.*).  She further argues that the ALJ appropriately noted that Ms. Harner's MSS appeared to be based largely on Plaintiff's own subjective complaints and opinion about her ability to work rather than the therapist's objective observations and that it was proper for the ALJ to find that the psychiatrist's normal mental status examination findings were inconsistent with the therapist's opinion that Plaintiff had marked to extreme mental limitations.  (*Id.* at 16-17).  According to the Acting Commissioner, Plaintiff asks the Court to reweigh the evidence, which it cannot do.  (*Id.*).  In her reply brief, Plaintiff reiterates the same arguments she presented in her opening brief and further asserts that the Acting Commissioner's "suicidal ideation" argument constitutes a post-hoc justification that cannot be considered by this Court.  (Pl.'s Reply Br., ECF No. 10, at 5-6).

The Court agrees with Plaintiff that the ALJ did not properly evaluate the opinion proffered by Ms. Harner.

### 1.    Supportability

An ALJ must "explain how" she considered supportability.  20 C.F.R. §§

404.1520c(b)(2), (c)(1), 416.920c(b)(2), (c)(1).  After summarizing Ms. Harner's opinion, the ALJ stated that "treatment notes from the therapist and psychiatrist do not support such extreme limitations with generally normal mental status exams from her psychiatrist, including consistent findings of logical thought processes, intact memory and concentration, and denial of suicidal ideation, as discussed above."  (R. 42) (citing R. 522-84, 585-810, 880-906).  Notwithstanding her use of the term "support" and her passing reference to the therapist's treatment notes, the ALJ's evaluation of the treatment notes and mental status examinations relied wholly on evidence from another source, which implicates the separate consistency analysis.  Supportability and consistency are different factors, separately enumerated and addressed within the regulations.  *See* 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  A key difference between them is that supportability considers the evidence and explanations "presented be a medical source," whereas consistency looks at "evidence from *other* medical sources and nonmedical sources in the claim . . . ."  *Id.* (emphasis added).  Thus, an ALJ does not address the support provided by a medical source for his or her opinion by articulating the consistency of the opinion with the evidence from other sources.

The ALJ disregarded the therapist's explanation for her assessed restrictions and the evidence of suicidal ideation and other mental health issues included in the treatment notes from her weekly therapy sessions with Plaintiff.  In the MSS, the therapist explained that Plaintiff's daily suicidal ideations based on the Columbia Suicide Severity Scale supported her assessment of Plaintiff's limitations.  (*Id.*).  Ms. Harner's treatment notes showed that Plaintiff admitted to suicidal ideation at thirteen of the twenty-three therapy sessions conducted by the therapist between March 2020 and November 2020.  (R. 524, 530, 533, 538, 541, 563, 798, 802, 807, 809, 887, 895, 902).  For example, on April 30, 2020, Plaintiff provided affirmative responses on the Columbia Suicide Severity Scale indicating that she had been thinking about how she would kill

16

herself and had formed some intent on acting on her thoughts.  (R. 538).  "[Plaintiff] reports she's had 3 suicidal thoughts over the week while she was sleeping."  (R. 539).  "[O]ne was me jumping off a bridge, one was cutting myself," and  "later in the session she reported having thoughts of 'taking something [medication] to get where I wanna go.'"  (*Id.*).  The treatment notes from her therapy sessions also indicated that Plaintiff reported she stayed in bed all day together with depression, difficulty sleeping or sleeping too much, irritability, anhedonia, fatigue, lack of motivation, apathy, guilt, fear, and discomfort with being alone while at the same time feeling she had to isolate herself from others.  (R. 750, 760, 782, 788, 799, 903).  Because the ALJ ignored the evidence presented by the opining source, §§ 404.12520c(c)(1), 416.920c(c)(1), she failed to satisfy her obligation to explain how she considered the supportability of Ms. Harner's opinion.

The ALJ stated that, "instead of basing her assessment on her own objective findings or the objective findings of the psychiatrist," Ms. Harner "actually asked the claimant about her thoughts regarding her abilities and the questions on the assessment."  (R. 42) (citing R. 890).  However, medical opinions regarding mental impairments often are based on the patient's "self-reporting," "so an over-reliance on this fact would make it extremely difficult for a claimant to establish disability based on mental impairment."  *Taylor v. Colvin*, No. 3:14-CV-1247, 2014 WL 6676151, at *19 n.8 (M.D. Pa. Nov. 25, 2014) (quoting *Cotton v. Astrue*, 374 F. App'x 769, 774 (9th Cir. 2010)).  "Due to the nature of psychological impairments, an ALJ may not reject a mental health opinion because of the expert's 'partial reliance' on a patient's self-reports."  *Michael L. v. Comm'r of Soc. Sec.*, No. 6:19-cv-00181, 2021 WL 1425321, at *4 (D. Or. Apr. 15, 2021) (quoting *Buck v. Berryhill¸* 869 F.3d 1040, 1049 (9th Cir. 2017)); *see also Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir. 1997) (stating that patient's report of complaints is essential diagnostic tool).  In turn, the ALJ's finding that the therapist based her opinion on nothing more

than the Plaintiff's subjective complaints and assessments of her abilities to work is not supported by the evidence.  The ALJ acknowledged in her summary of the opinion that "this assessment was based on clinical notes, subjective symptom complaints, and symptoms observed by the therapist."  (*Id.*) (citing R. 907-11).  In fact, Ms. Harner stated in the MSS that "[d]aily suicidal ideations based on Columbia – Suicide – Severity – Scale" supported "this assessment." (R. 910).

The Acting Commissioner observes that the ALJ noted "earlier" in her decision, as part of her overall RFC assessment, that, "in contrast to Ms. Harner's opinion of marked and extreme mental limitations, her treatment notes reflected that Plaintiff's symptoms were stable with treatment and her symptom exacerbations tended to parallel situational stressors including bereavement issues, conflict with her spouse, family issues, difficulties with her living situation, parenting issues, and the pandemic/virtual schooling."  (Def.'s Br., ECF No. 15) (citing R. 36). According to the Acting Commissioner, "[a]lthough Plaintiff reported suicidal ideation, she noted that these feelings were longstanding and that she had no plan or intent to follow through on them."  (Def.'s Br., ECF No. 9, at 15) (citing R. 803, 896).  The Acting Commissioner also refers to the ALJ's statement in her RFC assessment that there was some improvement as a result of the treatment she received.  (*Id.* at 15-16) (citing R. 41).

However, general statements concerning the Plaintiff's conditions, stressors, and improvement lack the requisite analysis of whether Ms. Harner's treatment records support her conclusions.  The ALJ also did not cite to the longstanding nature of the suicidal ideation or the lack of a plan as a reason for rejecting the therapist's opinion.  Accordingly, the Acting Commissioner's assertions must be rejected as nothing more than improper post-hoc rationalizations.  *See Schuster*, 879 F. Supp. 2d at 466.

Given the ALJ's failure to "explain how" she considered supportability, the Court

remands for the ALJ to explain how she considered this factor pursuant to the applicable regulations, *see* §§ 404.1520c(b)(2), (c)(1), § 416.920c(b)(2), (c)(1).

### 2.      Consistency

In addition, I conclude that the ALJ did not adequately explain how she considered the second critical factor in her evaluation of Ms. Harner's opinion, specifically, the consistency between the opinion "with the evidence from other medical sources and nonmedical sources in the claim," 8 C.F.R. §§ 404.1520c(b)(2), (c)(2), 416.920c(b)(2), (c)(2).  Although she did not explicitly frame her discussion in terms of "consistency," the ALJ did indicate that Ms. Harner's opinion was not consistent with the "generally normal" mental status findings of Plaintiff's treating psychiatrist, Dr. Geronian, "including consistent findings of logical thought processes, intact memory and concentration, and denial of suicidal ideation, as discussed above."  (R. 42) (citing 522-84, 585-810, 880-906); *see Cooper v. Comm'r of Soc. Sec.*, 563 F. App'x 904, 911 (3d Cir. 2014) (stating that ALJ need not employ "particular magical words").  However, the ALJ failed to consider the consistency of Ms. Harner's opinion with other aspects of Dr. Geronian's treatment records, evidence from medical sources besides Dr. Geronian and Ms. Harner, and non-medical source evidence.

According to the Acting Commissioner, "Ms. Harner's opinion was inconsistent with Plaintiff's reports that her symptoms improved with medication."  (Def.'s Br., ECF No. 9, at 15) (citing R. 41).  As part of her overall RFC assessment, the ALJ stated that "the claimant has consistently sought treatment with some improvement."  (R. 41).  But the Court has already considered and rejected the Acting Commissioner's assertions that the ALJ adequately considered the medical opinion evidence by proffering a general conclusion somewhere else in her decision concerning a claimant's treatment history and improvements.  (*See supra* Section V.A.1.; Def.'s Br., ECF No. 9, at 15).

In her consistency analysis, the ALJ relied wholly on Dr. Geronian's mental status findings.  (R. 42) (citing R. 522-84, 585-810, 880-906).  She thereby did not evaluate the consistency of Ms. Harner's opinion with other aspects of the psychiatrist's treatment records. According to Dr. Geronian's treatment notes, Plaintiff presented with cyclical periods of depressed mood, crying spells, mood swings, and irritability, and she reported insomnia and nightmares waking her up in the middle of the night.  (R. 341, 490, 492, 897, 904).  She also had mild paranoia and told Dr. Geronian at her medication management appointment on September 23, 2020 that she heard "noise," mostly stayed indoors, and was afraid to leave the house.  (R. 884, 897).  The ALJ did not explain how this evidence was consistent or inconsistent with the therapist's opinion.  If the ALJ had evaluated this evidence, she may have reached a different conclusion about the opinion's persuasiveness.  Because the ALJ instead selectively highlighted only those aspects of the treatment notes that tended to support her determination, the consistency analysis is flawed.  *See Piper v. Saul*, No. 2:18-1450, 2020 WL 709517, at *4 (W.D. Pa. Feb. 12, 2020) ("The ALJ is not entitled to 'cherry pick' favorable evidence and ignore records that run counter to her findings."); *Fanelli v. Colvin*, No. 3:16-CV-1060, 2017 WL 551907, at *9 (M.D. Pa. Feb. 10, 2017) ("[An] evaluation[ ] where the evaluator mentions only isolated facts that militate against the finding of disability and ignores much other evidence  that points another way, amounts to a 'cherry-picking' of the record which this Court will not abide."); *Griffith v. Astrue*, 839 F. Supp. 2d 771, 783 (D. Del. 2012) ("Plaintiff correctly argues that an ALJ is not permitted to 'cherry-pick' only that that evidence that supports her position.")..

The ALJ likewise did not evaluate the consistency of the therapist's opinion with evidence from other medical sources and non-medical sources.  For instance, in September 2019, another Central therapist stated that Plaintiff reported she did not feel like getting out of bed but forced herself to come to the session and that she had suicidal thoughts almost every other day,

20

saying to others "You would be better off without me." (R. 723). At the administrative hearing, Plaintiff testified she has episodes where she stays in bed, cries, and tells her husband she wants to die ten to fifteen times a month. (R. 62). Plaintiff's husband corroborated her testimony, stating that, whenever she had a bad day, she would have suicidal thoughts, talking about how she might cut herself. (R. 71). In her assessment of the opinion proffered by Ms. Harner, the ALJ disregarded Plaintiff's testimony and the additional treatment records by exclusively addressing Dr. Geronian's generally unremarkable mental status findings. *See, e.g.*, *Piper*, 2020 WL 709517, at *4. If she had discussed this additional evidence and its consistency with the therapist's opinion, she may have reached a different conclusion concerning the opinion.

Accordingly, the Court remands for the ALJ to address the consistency of Ms. Harner's opinion.[3] *See* §§ 404.1520c(b)(2), (c)(2), 416.920c(b)(2), (c)(2).

## B.  Plaintiff's Remaining Arguments

Plaintiff further argues that that, because the ALJ improperly evaluated Ms. Harner's well-supported opinion, she thereby failed to include the credibly established limitations assessed by the therapist in her RFC and, in turn, did not incorporate such limitations in the hypothetical presented to the VE. (Pl.'s Br., ECF No. 8, at 19-20; Pl.'s Reply Br., ECF No. 10, at 10). She also asserts that, even if the hypothetical was otherwise accurate, the expert's testimony would not support the ALJ's decision because two of the three positions identified by the VE required a

---

[3] The ALJ stated that Ms. Harner's assessment was not persuasive because she only treated Plaintiff for "a fraction of the relevant period." (R. 42). One factor to be considered under the regulations is the source's "relationship with the claimant, including length, purpose, and extent of the treatment relationship, as well as frequency of examinations and whether the medical source examined the claimant firsthand" 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Even if she properly considered the length of the treatment relationship between Plaintiff and Ms. Harner, still failed to satisfy her obligation to "explain how" she considered supportability and consistency. C.F.R. §§ 404.1520c(b)(1), (c)(1)-(2); 404.1520c(b)(1), (c)(1)-(2).

reasoning level exceeding the RFC assessed by the ALJ and the ALJ may not have found a significant number of jobs had she properly understood that the third position was the only one that could meet the RFC criteria.  (Pl.'s Br., ECF No. 8, at 21-22; Pl.'s Reply Br., ECF No. 10, at 10-11).  However, the Court need not decide whether these issues—which would be addressed later in the five-step analysis—constitute a basis for remand.  If the ALJ determines on remand that proper consideration of Ms. Harner's opinion warrants a more restrictive RFC, Plaintiff's claim concerning an improper RFC may fade away, as may her claims that the hypothetical flowing from that RFC failed to include all credibly established limitations.  If on remand the ALJ adopts the limitations proffered by the therapist, the VE  may not identify the same (or any) occupations available to Plaintiff, thus rendering Plaintiff's remaining arguments inapplicable. *See Steinninge*r *v. Barnhart*, No. 04-5383, 2005 WL 2077375, at *4 (E.D. Pa. Aug. 24, 2005) (not addressing additional arguments because the ALJ may reverse his or her findings after remand).  Accordingly, the Court does not consider these additional arguments at this time.

**VI.     CONCLUSION**

For the reasons set forth above, Plaintiff's request for Review is **GRANTED** to the extent that it requests remand.  This matter is remanded for further proceedings consistent with this memorandum.

BY THE COURT:


  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge